(No. 11712.—Judgment affirmed.)

THE CHICAGO AND VICINITY HUNGARIAN BENEVOLENT SOCIETY, Plaintiff in Error, *vs.* THE CHICAGO AND SUBURB HUNGARIAN AID SOCIETY *et al.*—(ALPHONSE LEFKOW, Defendant in Error.)

*Opinion filed February 20, 1918—Rehearing denied April 4, 1918.*

1. JUDGMENTS AND DECREES—*when decree becomes a consent decree and not subject to be set aside by a bill of review.* Where neither party objects to the master's report, a decree in accordance with the master's findings, which is approved before entry by the "O. K." and signatures of counsel for both parties and the master in chancery, becomes a consent decree, and is not subject to be set aside upon a bill of review for errors of law apparent upon the face of the record.

2. ATTORNEY AND CLIENT—*agreements of attorney of record in the conduct of a suit are the agreements of his client.* Where an attorney is the counsel of record for a client in a suit his agreements in the conduct and management of the litigation must be considered the agreements of his client, and if any of his acts are without sufficient authority as between him and his client, the remedy of the client is against his counsel.

3. CONTEMPT—*when an order of commitment for contempt is erroneous.* An order of commitment for contempt of court for disobedience of an order entered during a proceeding by a bill of review, of which the court had no jurisdiction because the decree sought to be reviewed was a consent decree, is erroneous.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

CHARLES R. WHITMAN, for plaintiff in error.

FRANK H. CULVER, and IRENE M. LEFKOW, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Defendant in error, Alphonse Lefkow, was by the superior court of Cook county adjudged guilty of contempt of court for failure to pay and restore to the custody of the court $616.33 obtained by him from the clerk of said court and which the court had previously ordered him to pay to said clerk.

If we correctly understand the situation, which is imperfectly stated in the briefs, some time prior to 1913 the Chicago and Vicinity Hungarian Benevolent Society filed a bill in chancery to dissolve the Chicago and Suburb Hungarian Aid Society, which last named society had been doing business since 1894 claiming to be a corporation organized not for pecuniary profit. That bill was dismissed for want of equity, and Alphonse Lefkow, defendant in error here, who had acted as attorney for complainant in that suit, sued his client in the municipal court of Chicago for services rendered and secured a judgment against it by default for $200, which judgment he assigned to Emma Lord, and garnishment proceedings were begun against the Illinois Trust and Savings Bank and the Continental and Commercial Trust and Savings Bank, in each of which the Chicago and Suburb Hungarian Aid Society had funds on deposit to its credit, for the purpose of collecting said judgment. Apparently the garnishment proceeding was instituted on the theory that the Chicago and Suburb Hungarian Aid Society had

no corporate existence and that the money on deposit to its credit belonged to the members of said society, a part of whom were also members of the Chicago and Vicinity Hungarian Benevolent Society. The Chicago and Suburb Hungarian Aid Society thereupon, in May, 1913, filed its bill in the superior court of Cook county against the Chicago and Vicinity Hungarian Benevolent Society, the defendant in error, Emma Lord and numerous other individuals, and the two banks mentioned. The bill prayed that defendant in error and Emma Lord be enjoined from prosecuting the garnishment suit; that the former members of the complainant society be enjoined from using the Hungarian and American names, and that the charter of the Chicago and Vicinity Hungarian Benevolent Society be declared void. Such proceedings were had in that case that the master in chancery to whom the cause was referred reported recommending that a decree be entered dividing the funds claimed by the complainant between it and the defendant society in certain proportions mentioned, the share of the defendant society being $667.31. The master further recommended that the complainant society pay seventy-five per cent of the costs and the defendant society twenty-five per cent. The master further found and reported that the defendant society was indebted to defendant in error, Lefkow, in the sum of $200 for legal services rendered in the suit of the Chicago and Vicinity Hungarian Benevolent Society against the Chicago and Suburb Hungarian Aid Society; that he also represented the Chicago and Vicinity Hungarian Benevolent Society in the suit then pending and had rendered services therein, and that the entire services rendered by defendant in error for the Chicago and Vicinity Hungarian Benevolent Society were reasonably worth $500, and the master recommended that upon the payment of said sum to defendant in error he should cause to be satisfied his judgment in the municipal court for $200 and dismiss the garnishment proceedings. The master also reported that the usual and rea-

sonable fee for the services of the complainant's solicitor in the suit was $600, and that said sum should be paid to said solicitor out of the amount found due the complainant society. The banks had previously paid to the clerk of the court, pursuant to an interlocutory decree, the amounts they had on deposit to the credit of the complainant society. Deducting the defendant society's share of the cost of that litigation left in the hands of the clerk $616.33, which the master found belonged to the defendant society. Defendant in error, Lefkow, as its attorney, collected and received from the clerk the whole of said sum of $616.33. The decree is identical with the master's report, and was rendered June 9, 1914. No appeal was prosecuted from it or writ of error sued out to review it.

On February 13, 1915, the Chicago and Vicinity Hungarian Benevolent Society filed a bill of review in the superior court of Cook county to review the decree of June 9, 1914, for errors of law apparent on the face of the record. We deem it unnecessary to refer to all the pleadings in that case. Defendant in error was made a party to that suit. Among other things, the bill prayed that he be required to return to the clerk the sum of $616.33. Defendant in error demurred to the bill, which demurrer was overruled, and he filed an answer setting forth facts relied on by him in justification of the charges made against him in the bill of review. This answer was, on motion of complainant in that suit, stricken from the files, and on motion of complainant the defendant in error was ordered to pay the sum of $616.33 to the clerk of the court within five days from that date. No decree had been entered on the bill of review, but it was contended by complainant that the money should be restored so that it would be put in the same situation it would have been in if the clerk had not paid said sum of money to defendant in error. Subsequent to the entry of said order defendant in error asked leave to file an amended answer to the amended bill of complaint for a

review of the former decree, but leave was denied him. On motion of complainant a rule was entered against defendant in error September 23, 1915, to show cause why he should not be attached for contempt of court in failing to pay the clerk $616.33 in obedience to the order of July 13, 1915. Defendant in error filed an answer to the rule, setting up a history of the former proceedings and his connection therewith and the services rendered the complainant, his former client, which was substantially the same as his answer sought to be filed to the amended bill of complaint. In addition to a justification of his receiving $500 of said sum for services rendered complainant, the answer set up that he had used and disposed of said $500 for his own needs but retained $116.33, which he was ready, willing and offered to pay to complainant or to the clerk of the court. Defendant in error further stated in his answer to the rule, that he had no money except said $116.33 at his disposal; that he owned no real estate or personal property, had no means or resources except the income he derived from the practice of law, which income for more than a year last past had been barely sufficient to supply his actual needs, and that he was therefore unable to comply with the order of the court. The superior court entered an order adjudging defendant in error to be in contempt for failing to return to the clerk said sum of $616.33, and ordered and adjudged that he stand committed to the county jail of Cook county until he paid said sum of money to the clerk of the court or until he was otherwise discharged. Defendant in error prosecuted an appeal to the Appellate Court for the First District, which court reversed the judgment and sentence of the superior court, and the case comes to this court upon a petition for writ of *certiorari.*

It is contended by defendant in error that the decree entered in the suit brought by the Chicago and Suburb Hungarian Aid Society against the Chicago and Vicinity Hungarian Benevolent Society, defendant in error and others,

was a consent decree and is therefore not a proper subject for a bill of review. Defendant in error's justification for receiving and retaining $500 of the $616.33 is based on the decree in that case. The master in chancery found, determined and reported the rights of the parties in that proceeding, and it does not appear that either party made any objection to the master's report, either before the master or the chancellor, and that the decree was prepared finding and decreeing in accordance with the findings, report and recommendation of the master. The decree was approved before entry by the "O. K." and signatures of counsel for both parties and the master in chancery. Clearly this made it a consent decree and not subject to be set aside upon a bill of review for errors of law apparent upon the face of the record. *Hohenadel* v. *Steele,* 237 Ill. 229; *Thompson* v. *Maxwell,* 95 U. S. 391.

Plaintiff in error contends it should not be bound by the consent of defendant in error, who was its counsel in that litigation, and should be permitted to show, under its bill of review, that it did not consent to the approval and entry of the decree. Defendant in error was the counsel of record for plaintiff in error in that litigation, and his agreements in the conduct and management of it must be considered the agreements of plaintiff in error. If any of his acts were without sufficient authority as between him and his client, the remedy of plaintiff in error is against its counsel. (1 Barbour's Ch. Pr. 373; *Bradish* v. *Gee,* 1 Ambler's Ch. 229; *Harrison* v. *Rumsey,* 2 Ves. Sr. 488; *Armstrong* v. *Cooper,* 11 Ill. 540.) No decree has as yet been entered under the bill of review.

We deem it unnecessary to enter upon a further discussion of the case. We agree with the Appellate Court that the order of commitment of defendant in error for contempt by the superior court was erroneous, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*