Chrysler Credit Corporation, Plaintiff-Appellee, v. M. C. R. Leasing Co. and Aurora Chrysler-Plymouth, Inc., Defendants-Appellants, and Northern Illinois Corporation, Intervenor-Appellee.

Gen. No. 69–16.

Second District.

October 9, 1969.

Dreyer, Foote & Streit, of Aurora, for appellants.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an interlocutory appeal by the defendants, M. C. R. Leasing Co., and Aurora Chrysler-Plymouth, Inc., from an order granting a temporary injunction in a replevin action brought by the plaintiff, Chrysler Credit Corporation.

The plaintiff filed a complaint for replevin wherein it alleged that it was entitled to possession of sixty-four automobiles wrongfully obtained by the defendants. Subsequently, it filed a petition alleging that the intervenor, Northern Illinois Corporation, also claimed the right to possession of many of the same automobiles; that it was advised that two other financial institutions likewise claimed a right to possession of some of the same

automobiles, all by virtue of security agreements; that a complete examination of the defendant's records would be necessary to determine the relative priorities of the respective claimants; that it had been informed that some of the defendants' books and records had been removed by the defendants; that it feared that such books and records might be either altered or destroyed; that an injunction should issue restraining the defendants from destroying, altering or disposing of their books; and that the defendants should be ordered to deliver such books and records to the court to be impounded until further order.

The petition was served upon the defendants, together with a notice that the matter would be heard before Judge John S. Petersen on a date shortly after the service. The defendants immediately prepared and presented to the court, a motion for change of venue, supported by affidavit, asserting that they could not get a fair trial before Judge Petersen or any Aurora area judge.

Judge Petersen was advised of both motions, and he entered an order granting the plaintiff's petition for temporary injunction and at the end of the order added the words, "the case is assigned to Judge Carl A. Swanson for trial."

Thereupon, the defendants moved to vacate the order of Judge Petersen on the grounds that after the motion for change of venue was made in due time and in proper form, the court had no power to render any further order, except such as may be made in connection with the one which allowed the change of venue. Judge Swanson, over a span of several hearings, heard the parties and entered a mandatory injunction order directing that the books and records be deposited at a given storage place under the control of the sheriff, subject to further order of the court; and that the plaintiff and intervenor pay the expenses thereof. The order further stated that

45

to the extent the prior order of Judge Petersen was in conflict with the order issued by his court, said prior order was modified.

The defendants first argue that the earlier order of Judge Petersen was void, as it was made after a proper motion for change of venue, pursuant to section 1 of the Venue Act (Ill Rev Stats 1967, c 146, par 1). Presumably, the plaintiff does not disagree with this contention, as it neither addressed itself to, nor responded to the defendants' argument.

■ ■ We believe that the defendants' position is correct. It has been repeated, too often to belabor, that where a petition for change of venue, on the ground of prejudice of a judge, is presented in due time and in proper form, the court is without power to render any further order except in connection with the order allowing the change of venue. Hinduliak v. Inn of Four Lakes, Inc., 98 Ill App2d 42, 48, 240 NE2d 532 (1968); Gates v. Gates, 38 Ill App2d 446, 448, 187 NE2d 460 (1963); Agar Packing & Provision Corp. v. United Packinghouse Workers of America, 311 Ill App 502, 505, 508, 36 NE2d 750 (1944); Simpson v. Simpson, 165 Ill App 515, 516 (1911). The order of Judge Petersen granting the temporary injunction after presentation of the motion for change of venue—which the plaintiff does not challenge as being bad in either form or substance—was improper and void.

However, after the entry of Judge Petersen's order granting the temporary injunction, the question of whether a temporary injunction should issue in reference to the protection of the books and records, was heard at length by Judge Swanson, the transferee judge. Obviously, he was impressed by the charge that there allegedly was double and triple financing by the defendants; and that there was a need for complete inspection of certain of the defendants' books in order to determine who, among the plaintiff and intervenors, would have the right to the

various automobiles and to allay the purported fear that otherwise certain of these records would not be available.

At the time the order appealed from was entered, the defendant dealership had closed its doors. The only business activity was work by an accountant to take care of certain payroll matters, clarify certain customer problems, and determine receivables. The court's order provided that the books and records be impounded—not produced—at the address of the accountant, where some of the records then were, or at such other place as the parties might agree. The books and records to be impounded covered only a two-year period. Only the defendants' agents were to have access to the documents. The plaintiff and intervenor were to pay all costs in connection with the storage and maintenance of the records. It appears from court's statements that the records were to be impounded only for so long as necessary to enable the plaintiff and intervenor to obtain copies of documents ordered by the court to be produced.

In view of the circumstances of this case, we find that it is readily distinguishable from People ex rel. General Motors Corp. v. Bua, 37 Ill2d 180, 226 NE2d 6 (1967), and that the order entered by Judge Swanson served a useful purpose and was not unduly broad.

The order reflects the concern which he expressed at the hearings and obviously was the result of these hearings, and not of the prior order of Judge Petersen. It is true that the second order did not vacate the earlier one, but referred to the earlier order as being modified to the extent that it was in conflict with the latter one. In this regard the second order was erroneous. It should have vacated the earlier, void order. It does not follow, however, that the second order—that of Judge Swanson —was void, as argued by the defendants. It was valid in all respects other than it should have provided that the prior order was vacated thereby, rather than that to the

extent that the prior order conflicted with the latter order, it was modified thereby.

The defendants also contend that the injunction order was improper in that a replevin action is an action at law and the equitable relief of injunction may not be granted in such an action, and that only the relief specifically provided for by the replevin statute may be awarded. We do not agree with the contention that injunctive relief is improper in a replevin action.

Concededly, replevin is governed by the statute and the remedy provided and procedure to be followed is controlled and limited by the Replevin Act to the extent it is expressive of those matters. Thus, a local rule of court—which purported to provide that if the property to which possession is sought is concealed so that it cannot be found upon demand by the officer, the defendant must turn it over or be deemed in contempt of court— was held to be void in that it compelled the defendant to do something in a replevin suit which was not provided for by the statute. Universal Credit Co. v. Antonsen, 374 Ill 194, 29 NE2d 96 (1940).

The court noted that the Replevin Act did not contain any authorization for demanding the defendant to turn over property upon threat of fine or jail sentence; and that the statute did contemplate a money judgment if the property was not turned over. Universal Credit Co. v. Antonsen, supra, 198. The court further pointed out that the local rule could not expand the remedy or power provided by the Act. It noted, however, on page 199 of the opinion, that there could be contempt in a replevin action if there were misconduct or contempt of court orders; and that the order in a replevin action and the resulting writ is directed to the court's officer and is not a command to the defendant.

A temporary injunction of the nature ordered here is not, however, a remedy beyond the scope of the Replevin Act, nor prohibited by it. The purpose of the tempo-

rary injunction was to further and assist the action. The Replevin Act expressly provides that, where not in conflict, the Civil Practice Act is to govern as to the procedure and rules applicable to such a proceeding. (Ill Rev Stats 1967, c 119, par 21a.) The circuit courts are given the power by statute to award injunctions and issue such writs as may be necessary or proper to carry into effect the powers granted to them (Ill Rev Stats 1967, c 37, pars 72.25 and 72.26), and are granted injunctive powers by the Injunction Act (Ill Rev Stats 1967, c 69, par 1 et seq.).

■ We find nothing in the Replevin Act which expressly or impliedly prohibits the issuance of a temporary injunction if necessary as a procedural aid to ascertain the truth and a complete disclosure of all of the facts essential to a correct determination of a replevin action. -

The argument that injunctive relief is equitable and may not be awarded in an action at law is not persuasive. There are instances, presumably, where the time-honored distinctions between courts of law and chancery and their powers may have merit. See: Ill Rev Stats 1967, c 110, par 1. These instances and distinctions, however, have long been losing significance.

The Illinois Constitution, Article VI, par 9, grants unto our circuit courts unlimited original jurisdiction of all justiciable matters without distinction between chancery and law powers. It is of no significance that a circuit may not have a chancery division; the important point is that under the new Judicial Article, every circuit judge has equity powers, which may be exercised, to grant the form of relief which the case may require. Thus, the struggle to amalgamate law and chancery powers, which began in England in 1873, was concluded in Illinois when its electorate adopted the new Judicial Article in November of 1962.

49

■ Also, one of the dominant aims of the Civil Practice Act is that controversies be speedily and finally determined according to the substantive rights of the parties. Such determination of rights would be shackled if the powers of a court of equity could not extend relief temporarily so as to protect a party against irreparable injury pending proceedings at law to establish a legal right.

The refusal of a court to permit the rote expression of the rule that equitable relief may not be granted in relation to a legal action is not new. In Kulwin v. Harsh, 232 Ill App 419 (1924), the court—in answer to the contention that the only question between the parties was the right to possession which was purely a legal matter, and, therefore, the court was without equity jurisdiction—stated at page 426:

> "The rule invoked by counsel for the defendant rests upon the principle that parties having legal rights should be remitted to courts of law for their vindication, and that jurisdiction in equity should be denied until the legal rights are established by law. In modern practice the rule is nowhere so rigid as that which originally prevailed, and the tendency of courts of equity now is to extend relief temporarily so as to protect against irreparable injury pending proceedings at law to establish a legal right."

And, on pages 423 and 424, the court pointed out that the appointment of a receiver was proper by the trial court even though the legal proceeding as to possession was then pending before the appellate court, and stated:

> "By the weight of authority it is a well-recognized province of equity jurisdiction to give aid to an action in another court, either by injunctive process or by the appointment of a receiver whenever either or both of these remedies are necessary to preserve the existing status of property until the proper disposi-

50

tion of the property has been determined in litigation then pending respecting the property, provided irreparable damage may result if the existing status of the property is not preserved."

Also see: 27 Am Jur2d, Equity, § 11.

■ We believe that the trial court had the power to grant the injunctive relief which it ordered. We see no reason why such an order could be entered in another action in aid of this one, and not in this one, itself; indeed, it seems obvious that it is to everyone's advantage that the particular injunctive remedy be sought in this same proceeding. It is not a practice to be followed lightly, but the court apparently was aware of this and provided by its order as much protection and convenience to the defendants as was proper under the circumstances. We cannot say that the court, under the facts before it, abused its discretion in exercising the power it had.

As heretofore stated, the order of Judge Petersen, insofar as it went beyond ordering a change of venue, was void; the order of Judge Swanson was not void, and was erroneous only insofar as it purported only to modify the earlier order of Judge Petersen. It should have vacated that order. Accordingly, the order appealed from is affirmed in part and reversed in part and the cause is remanded for further proceedings not inconsistent herewith.

Affirmed in part and reversed in part and remanded.

MORAN, P. J. and SEIDENFELD, J., concur.