BILLIE JEAN HAMMEL ROYSTER, Plaintiff-Appellant, *v.* FRED D. HAMMEL, Defendant-Appellee.

Fifth District   No. 76-455

Opinion filed July 25, 1977.

Freddy L. Shapiro, of Murphysboro, for appellant.

R. N. Gandy, of Peek and Gandy, of DuQuoin, for appellee.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

This appeal involves an action for divorce initiated by plaintiff Billie Jean Hammel Royster on the ground of mental cruelty against defendant Fred D. Hammel in the Circuit Court of Perry County. Defendant counterclaimed for divorce alleging that plaintiff was guilty of adultery.

After a bench trial of the issues, the trial court found in favor of the defendant on his counterclaim, and specifically denied plaintiff's complaint. The decree of divorce was entered on June 18, 1976. Custody of the parties' two daughters, Sherry Jean Hammel and Dawn Rachelle Hammel, was awarded to plaintiff, with child support payments of $100 per month for each to be paid by defendant to plaintiff. Custody of the son of the parties, Fred Douglas Hammel, was awarded to defendant. Under that portion of the decree which disposed of the property acquired

during the marriage, the real estate owned jointly by the parties was awarded to defendant conditioned upon his payment of $7,750 to plaintiff for her interest therein. Defendant was also ordered to pay plaintiff one-half of the 1975 Illinois and Federal income tax refunds issued by checks to the parties jointly, but then in defendant's possession. Each of the parties was awarded the automobile then in his or her possession, and each was awarded certain delineated items of personal property.

On appeal from this order plaintiff contends that the trial court erred in granting a divorce to defendant, because the proof offered at trial did not conform to the allegations of the counterclaim and that the evidence failed to establish sufficient support for the finding of adultery. Plaintiff also maintains that the court erred in not granting the divorce on the ground of mental cruelty and also that the court erred in refusing to allow the parties' 13-year-old daughter to testify in support of the ground of mental cruelty which plaintiff sought to prove. Finally, plaintiff alleges that manifest injustice was done in granting custody of the parties' nine-year-old son to defendant, and that to do so was against the manifest weight of the evidence as to the child's best interest and welfare.

Prior to the oral argument of this case, defendant filed a motion to dismiss the appeal on the ground of release of errors by plaintiff's acceptance of the benefits of the decree from which she appeals. The motion was ordered to be taken with the case, and at the outset we direct our consideration to this preliminary question. In his affidavit in support of the motion to dismiss, defendant states that on June 26, 1976, plaintiff married William Royster; that she executed a quitclaim deed to the marital home and accepted from defendant $7,750 for her interest therein; that she accepted and removed all the personal property awarded to her by the court; and, that she accepted one-half of the 1975 tax refunds. Further, defendant states that plaintiff has not offered to make restitution of any of the property or monies she received under the decree. Plaintiff has objected to the motion to dismiss arguing that the doctrine of release of errors should not apply, because defendant would not be placed at a distinct disadvantage upon reversal of the decree.

■■ The courts of review in Illinois have consistently and repeatedly held that a party to a divorce decree cannot accept those portions of the decree which are beneficial to him and afterward prosecute an appeal to reverse those parts which are unfavorable to him, where to do so would place the opposing party at a distinct disadvantage upon a reversal of the decree. *Reinken v. Reinken*, 351 Ill. 409, 184 N.E. 639; *Boylan v. Boylan*, 349 Ill. 471, 182 N.E. 614; *Gregory v. Gregory*, 24 Ill. App. 3d 436, 321 N.E.2d 122; *Kissin v. Kissin*, 29 Ill. App. 2d 126, 172 N.E.2d 635.

In the instant case, however, we find that on the facts before us there is no merit to defendant's contention that plaintiff accepted financial

benefits under the decree. Title to the marital home was in joint tenancy, and the plaintiff surrendered her interest therein by quitclaim deed to the defendant in exchange for a cash payment to her of one-half of its appraised value. The automobile received by plaintiff was titled in her name and was in her possession. The 1975 tax refunds were payable to the parties jointly, and plaintiff merely accepted her one-half interest in the proceeds. Finally, most of the personal property awarded to plaintiff by the court consisted of furnishings and bedding used for the two daughters placed in her custody. As to the remaining few items of household furnishings, while plaintiff would also have a one-half interest in these by virtue of their acquisition during the marriage, additionally there was ample evidence to show that the bulk of these items had been purchased with the proceeds of an insurance settlement awarded to the plaintiff personally. In short, as to the financial benefits alleged to have been accepted, we find that plaintiff received nothing under the decree which she did not already have. In such a situation, the doctrine of release of errors cannot be invoked. *Pearson v. Pearson*, 42 Ill. App. 3d 522, 356 N.E.2d 993; *Katz v. Katz*, 10 Ill. App. 3d 39, 293 N.E.2d 904.

Defendant also maintains that plaintiff is estopped from prosecuting this appeal by reason of her remarriage subsequent to the entry of the decree of divorce, arguing that the freedom to enter into another contract of marriage was one of the benefits which inured to the plaintiff by virtue of the decree. As far as we can determine, this is a question of first impression in the reviewing courts of Illinois, and all of the cases in which an appeal has been dismissed by the application of the doctrine of release of errors have been premised upon the acceptance of *financial* benefits by the appellant.

Nevertheless, we do find that plaintiff's remarriage manifests an unqualified intention on her part to be bound by the divorce decree. As was noted in *Alderson v. Alderson*, 258 Ind. 328, 330, 281 N.E.2d 82, 83 (1972), "It would be ludicrous to permit a party to a divorce who has subsequently contracted a perfectly valid second marriage to have the second marriage, on his own motion, rendered bigamous on appeal." Similar reasoning has been applied by the courts of sister States which have held that a party who remarries forfeits the right to attack that portion of the divorce decree which dissolves the marriage. See *Miller v. Miller*, 202 N.W.2d 105 (Ia. 1972); *Weiss v. Weiss*, 127 So.2d 743 (La. App. 1961).

Plaintiff, in the memorandum accompanying her objection to defendant's motion to dismiss the appeal, states that she is "not seeking to have the divorce reversed so as to remain married to defendant, but is merely asking that the basis upon which the divorce was granted be reversed." However, the foundation upon which this prayer for relief is

premised is not logically sound. It rests upon the faulty presumption that if this court were to reverse the trial court's finding that defendant is entitled to the divorce on the ground of adultery, then plaintiff would be entitled to a divorce on her alleged ground of mental cruelty. This does not necessarily follow. While we do not reach the merits, it would be quite possible in this case, and indeed in any action for divorce involving both a complaint and a counterclaim, to find that the evidence adduced at the trial was not sufficient to support the granting of a divorce to either party. (See, for example, *Gregory v. Gregory*, 24 Ill. App. 3d 436, 321 N.E.2d 122, where the appellate court reversed the decree of divorce on the basis that neither of the parties had presented the quantum of proof necessary to support their alleged grounds for divorce.) In so holding, the court stated the applicable rule as follows:

> "Our legislature has the sole power to determine what causes, if any, must be established in order for one of the State's residents to be entitled to a divorce. While other jurisdictions in recent years have recognized the countervailing consideration that much harm may result from a denial of a divorce where the marriage has ended in fact (24 Am. Jur. 2d *Divorce and Separation* §9), the public policy of our State is to preserve the marriage. (*Stanard v. Stanard*, 108 Ill. App. 2d 240, 249 (1969).) The law in Illinois remains that a marriage should not be lightly terminated. A plaintiff is required to prove a statutory cause for divorce by competent evidence, even though the court might conclude the marriage to be dead. *McGowan v. McGowan*, 15 Ill. App. 3d 913, 915 (1963)." 24 Ill. App. 3d 436, 440.

■■ In consideration of these matters, we hold that where a party to a divorce has demonstrated an unqualified intention to be bound by the decree by contracting another marriage, that party is estopped from later prosecuting an appeal attacking the grounds upon which the divorce was granted. It must be emphasized, however, that we do not hold that such a party is estopped from attacking on appeal other elements of the divorce decree such as awards of custody, alimony, property division, or any portion of the decree which upon a reversal and remand would not affect the validity of the marital dissolution.

Accordingly, defendant's motion to dismiss this appeal in its entirety is denied. However, we hold that plaintiff, because of her remarriage, has waived those assignments of error which attack the grounds upon which the divorce was granted and will be estopped from prosecuting those issues on this appeal.

The only assignment of error which does not relate to the grounds on which the divorce was sought is the contention that the trial court erred in granting custody of the parties' nine year old son to the defendant. In the

decree of divorce it was specifically found that both parties to the action "are fit and proper persons to have the care, custody, control and education of the minor children of the parties." After hearing the evidence and in the exercise of its discretion, the court awarded custody of the two female children to the plaintiff and custody of the son of the parties to the defendant.

■■ The standard of review in child custody awards is well-settled and was aptly stated in *Rodely v. Rodely*, 28 Ill. 2d 347, 350, 192 N.E.2d 347, as follows:

> "The matters of child custody and visitation privileges rests largely in the broad discretion of the trial court, and it has been repeatedly stated that its determination with respect thereto should not be disturbed on appeal unless a manifest injustice has been done."

See also *Christensen v. Christensen*, 31 Ill. App. 3d 1041, 335 N.E.2d 581; *O'Donnell v. O'Donnell*, 5 Ill. App. 3d 870, 284 N.E.2d 682; *Smith v. Smith*, 36 Ill. App. 2d 55, 183 N.E.2d 559.

■■ Upon careful review we find that the record is replete with testimony supportive of the trial court's finding that both parties are fit and worthy parents. No evidence of abuse or neglect by either party was adduced. As to defendant, it is undisputed that he is and has been regularly employed and has consistently provided a comfortable living for his family. Testimony at the trial from various witnesses showed that defendant has fostered an especially close relationship with his son. He frequently takes him along on outings; has coached his Khoury league baseball team; often takes him hunting and fishing; and spends much time with him at home and on visits to the home of his grandfather. By awarding custody of the boy to the defendant, he will continue to live in the home which he has known all his life and will attend the same school, both of which will contribute to the stability of his environment. The evidence further showed that defendant's working hours are closely aligned with those hours that the boy attends school, and that the defendant has made arrangements with both his mother and a neighbor woman to care for his son when he is absent from the home.

Upon careful consideration of these factors and review of all the evidence relevant to the determination of the custody of the children, we find no abuse of discretion by the trial judge in the decision of this matter. Nor is there any indication in the record that manifest injustice has been done. There is ample evidence in support of the finding that the boy's best interest will be served equally well by living with his father as with his mother, and we are not constrained to overturn the decree of the circuit court on this basis. That court from its vantage point of having heard the testimony was in a better position to judge what would be in the best

interests of the child than could a court of review. Accordingly, the order of the lower court as to the award of custody is affirmed.

Judgment of the Circuit Court of Perry County is affirmed.

EBERSPACHER and G. J. MORAN, JJ., concur.